RAILROAD SUPPLY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11961, 16881.   Promulgated April 1, 1929.

*Frank S. Bright, Esq.*, and *H. Stanley Hinrichs, Esq.*, for the petitioner.

*Jas. A. O'Callaghan, Esq.*, and *P. A. Bayer, Esq.*, for the respondent.

OPINION.

SMITH: Section 327 of the Revenue Act of 1918 provides in part:

That in the following cases the tax shall be determined as provided in section 328:

\*    \*    \*    \*    \*    \*    \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The evidence in this proceeding indicates that the petitioner owned numerous patents during the taxable years which were not reflected in its invested capital in any manner. The cost of the same had been charged to expenses in prior years. The amount thus expended is not shown by the record. The evidence also shows that a part of its sales during the taxable years were predicated upon patents which were owned by Bell, the president, but which the petitioner was permitted to use in its business without any charge therefor. The fair market value of these patents is not shown nor is it shown that the petitioner could not have acquired them at a reasonable price had it elected to do so. Although it may be admitted that the use of these patents in the petitioner's business without cost to it created some abnormality in invested capital, the extent of the abnormality is not shown.

The basis for special assessment is:

* * * That the tax if determined without benefit of this section [section 328] would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. * * *

There is no evidence in the instant proceeding that the profits tax determined by the respondent works any exceptional hardship upon the petitioner. The amount of the excess-profits tax determined by the respondent for 1918 was 29.35 per cent of the net income; for 1919, 18.21 per cent; for 1920, 19.19 per cent. The excess-profits tax thus determined by the respondent was only the tax determined in the lowest bracket fixed by the statute. We are not informed as to what excess-profits taxes were paid by representative corporations. Possibly some corporations relying upon patents for their principal source of income paid a lower excess-profits tax than the amount determined by the respondent; possibly others paid a much higher rate. Whether any relief could be given to the petitioner by comparing it with other corporations is not certain. It is common knowledge, however, that many corporations paid excess-profits taxes up to 50 per cent of their net income during the taxable years involved and the statute in section 328(b) indicates that in any case where the excess-profits tax is less than 50 per centum of the net income of the taxpayer the installments shall, in the first instance, be computed upon the basis of such tax. If any implication may be drawn from this provision it is that corporations whose excess-profits tax is less than 50 per centum of the net income shall not, in the first instance, be entitled to have their profits tax computed under the provisions of section 328. We think that before a corporation may claim the benefits of section 328 it must prove such a gross abnormality of invested

capital or income as warrants the determination of the tax by comparison with representative corporations. The whole picture presented by the instant proceeding indicates only a low rate of excess-profits tax and we think such abnormalities of invested capital and income as have been shown raise no *prima facie* presumption that the computation of the tax liability under section 301 of the statute works any exceptional hardship upon the petitioner.

*Judgment will be entered for the respondent.*